UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES LUCE,

       Plaintiff,

v.                        CASE NO. 8:20-cv-2757-JSM-TGW

KILOLO KIJAKAZI,
Acting Commissioner, Social
Security Administration,[1]

       Defendant.

_____

REPORT AND RECOMMENDATION

The plaintiff in this case seeks judicial review of the denial of his claim for supplemental security income payments. Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain any reversible error, I recommend that the decision of the Commissioner be affirmed.

I.

The plaintiff, who was fifty-one years old at the time of the administrative hearing, has a tenth-grade education and has past relevant

_____

[1]Kilolo Kijakazi became the acting Commissioner of Social Security on July 9, 2021, and should be substituted as the defendant. See Fed. R. Civ. P. 25(d).

work as a structural steel and construction industry painter (Tr. 49, 17). He filed claims for supplemental security income payments, alleging that he became disabled due to "back problem, left shoulder injury, and neck" (Tr. 198). The claim was denied initially and upon reconsideration.

The plaintiff, at his request, received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of degenerative disc disease of the cervical spine with disc herniation and extrusion at the C5-6 level; degenerative disc disease of the thoracic and lumbar spine with disc herniation and extrusion at the L5-S1 level with canal and lateral recess stenosis and displacement of the S1 nerve root; tendonitis and superior labral tear and acromioclavicular joint hypertrophy of the left shoulder; hypertension; visual impairment; and morbid obesity (Tr. 12). The law judge determined that, with those impairments, the plaintiff had the following residual functional capacity (Tr. 13):

> [He could] perform light work as defined in 20 CFR 416.967(b). He could occasionally lift up to only 20 pounds. He requires a sit-stand option, ever[y] hour. He can walk 30 minutes at a time. He can only occasionally use his hands for pushing or pulling. He can only occasionally use his left hand for overhead reaching and he can frequently use his right hand for overhead reaching. He can have no exposure to hazards, climbing, or unprotected heights, including avoiding hazards in the

> workplace such as boxes on the floor, doors ajar, or approaching people or vehicles. He can occasionally perform the postural activities. He cannot do a job entailing near vision acuity.

The law judge concluded, based on the testimony of a vocational expert, that the plaintiff was unable to perform his past relevant work as a structural steel and construction industry painter (Tr. 17–18). However, in light of the testimony of the vocational expert, the law judge determined that the plaintiff could perform jobs that exist in significant numbers in the national economy, such as collator operator (Tr. 18–19). Consequently, the law judge found that the plaintiff was not disabled (Tr. 19). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner of Social Security.

## II.

In order to be entitled to supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results

3

from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported

by substantial evidence. <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied, and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff asserts that the Commissioner erred in five respects: (1) the law judge failed to afford the plaintiff "a full and fair hearing and record"; (2) the law judge improperly substituted his judgment for that of medical experts; (3) the law judge erred in making internally inconsistent factual findings and failing to state with clarity the rule being applied; (4) the law judge erred in using as grounds for his decision vocational expert testimony based on an incomplete hypothetical question; and (5) the law judge did not apply proper standards in discounting plaintiff's subjective complaints (Doc. 13, pp. 3, 9, 11, 14, 17). None of these arguments is meritorious. Moreover, in light of the Scheduling Order and

Memorandum Requirements, any other challenges to the law judge's findings are forfeited (Doc. 12, p. 2).

As indicated, the plaintiff broadly asserts that the law judge failed to "afford the plaintiff a full and fair hearing and record" (Doc. 13, p. 3) This conclusory assertion is not developed. Notably, the plaintiff did not identify any evidence that was missing from the record; rather, he merely asserts that the law judge did not properly evaluate the evidence in the record. Importantly, a remand is not warranted because of a failure to develop the record, unless the plaintiff can demonstrate evidentiary gaps in the record that result in "unfairness or 'clear prejudice.'" Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997). The plaintiff has made no argument on this point.

Rather in this section of the memorandum, the plaintiff asserts various criticisms of the decision. Thus, he contends first that the hypothetical question to the vocational expert was deficient because it did not specify the plaintiff's ability to sit and stand without interruption, or the amount of time the plaintiff can sit, stand, and walk in an eight-hour day. (Doc. 13, p. 3). The Commissioner persuasively answers these contentions (Doc. 20, p. 11). Since the law judge found that the plaintiff can perform light work, that means the plaintiff is limited to standing and walking to

about six hours per day. Further, the law judge specifically found that the plaintiff "requires a sit stand option, ever[y] hour" (Tr. 13). Consequently, the law judge made adequate findings regarding the plaintiff's ability to sit, stand, and walk. Further, the plaintiff's contention that the law judge needed to make a finding about how long it would take to change between sitting and standing is frivolous, as the Commissioner correctly argues (Doc. 20, pp.11–12).

The plaintiff identifies a typographical error in the law judge's decision. Specifically, the law judge wrote that "[b]ased on the foregoing, the undersigned finds the claimant has the above residual functional capacity, which is supported by" followed by a blank space (see Tr. 17). Thus, the plaintiff asserts that the law judge "does not state the evidence that [he] relied upon as support for his decision" and further argues that "[w]hile this omission is most likely a clerical error, it leaves the reader speculating as to what records the ALJ found to be supportive of his assessment" (Doc. 13, p. 4). This argument is unavailing.

While there does appear to be a typographical error, this mistake was made at the end of a thorough discussion—spanning four pages—by the law judge set forth at step four of the analysis (see Tr. 13–17). Thus, the assertion that such an omission "leaves the reader speculating

as to what records the ALJ found to be supportive of his assessment" is meritless.

The plaintiff, in addition, asserts that "[t]he record is also deficient in that the ALJ did not properly evaluate the various medical opinions" (Doc. 13, p. 4). This argument is similarly unavailing.

As acknowledged by the plaintiff, this claim was filed on or after March 27, 2017, and thus, the new regulations governing the assessment of medical opinion evidence apply. Those regulations change established principles in the Eleventh Circuit concerning the evaluation of medical opinions.

> Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision.   As the Administrative Conference of the United States' (ACUS) Final Report explains, these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential standard to us.

Revision to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5853, 2017 WL 168819 (Jan. 18, 2017).

Accordingly, the regulations now state (20 C.F.R. 416.920c(a)):

We will not defer or give any specific evidentiary

> weight, including controlling weight, to any
> medical opinions(s) or prior administrative
> medical finding(s), including those from your
> medical sources.

Rather, medical opinions and prior administrative medical findings are to be

considered for their persuasiveness based upon the following factors:

(1)    Supportability

(2)    Consistency

(3)    Relationship with the claimant [including]

   (i)     Length of the treatment relationship

   (ii)    Frequency of examinations

   (iii)   Purpose of the treatment relationship

   (iv)    Extent of the treatment relationship

   (v)     Examining relationship

(4) Specialization

(5) Other factors

20 C.F.R. 416.920c(c)(1)–(5).

Supportability and consistency are the two most important

factors.    20 C.F.R. 416.920c(a); 20 C.F.R. 416.920c(b)(2).    Indeed, law

judges are not even required to explain how they considered factors 3

through 5, 20 C.F.R. 416.920c(b)(2), unless the record contains differing,

but equally persuasive, medical opinions or prior administrative medical

findings about the same issue.  20 C.F.R. 416.920c(b)(3).

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. 416.920c(c)(1).

"Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. 416.920c(c)(2).

The new regulations also provide that where the record contains multiple medical opinions or prior administrative medical findings from a single medical source, the law judges are not required to articulate how they considered each medical opinion or prior administrative medical finding, but it is sufficient if there is a single analysis of the factors.  20 C.F.R. 416.920c(b)(1).

The plaintiff asserts that the law judge did not "properly analyze all the evidence and sufficiently explain how he considered supportability and consistency of the records and how persuasive he found all medical

opinions in the record" (Doc. 13, p. 4).

In support of his assertion, the plaintiff first lists a variety of magnetic resonance imaging scan ("MRI") results that were in the record, without providing any explanation as to how such records were not properly analyzed by the law judge (see Doc. 13, pp. 5–6). However, for several reasons the decision was not deficient with respect to the MRIs. In the first place "there is no rigid requirement that the ALJ specially refer to every piece of evidence in his decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). Further, the law judge did in fact discuss MRIs in his decision (see Tr. 15). Also, the MRIs are not medical opinions so that the law judge did not have to analyze them for their persuasiveness. A "medical opinion is a statement from a medical source about what you can do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions." 20 C.F.R 416.913(a)(2).

The plaintiff contends, in addition, that the law judge discussed "reports from Dr. Fabio Fiore, Dr. Hassan Bitar, Dr. Evelyn Maningo, and Dr. Eniola Owi (R. 15-16) but does not explain how persuasive he found these reports except for that of consulting examiner Dr. Owi" (Doc. 13, p. 5). This contention fails because it was not properly developed. A doctor's report is not the same as a medical opinion as defined in the regulations.

11

While there may be medical opinions in a doctor's report, the plaintiff has not identified any medical opinions that warrant an evaluation for persuasiveness. Accordingly, under the Scheduling Order and Memorandum requirements, this contention is forfeited ("challenges must be supported by citations to the record of the pertinent facts. . . . Any contention for which these requirements are not met are deemed forfeited and not evaluated") (Doc. 12, p. 2).

The plaintiff also asserts that "[t]he ALJ did not even mention the opinion of Dr. Larry Fishman" who "opined that Plaintiff was a candidate for surgery but that comorbidities make surgery challenging" (Doc. 13, p. 8) (internal citation omitted). Importantly, though, the opinion of Dr. Fishman does not constitute a "medical opinion" under the new regulations. The statements made by Dr. Fishman, and cited by the plaintiff, are statements regarding the plaintiff's candidacy for a surgery, not a statement regarding the plaintiff's impairments, if any. Thus, this assertion is also without merit.

Moreover, not only is the statement by Dr. Fishman not a medical opinion, but it is also not adequate to support a claim of disability. It is well-established that "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is

12

insufficient [to show disability]; instead, the [plaintiff] must show the effect of the impairment on [his] ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005), quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). In other words, it is the functional limitations that determine disability. Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). Therefore, Dr. Fishman's remarks that the plaintiff was a candidate for surgery but that his comorbidities would make a surgery challenging does not establish any functional limitation. Importantly, to show reversible error from the law judge's failure to address Dr. Fishman's findings, the plaintiff would have to show that this comment would compel the law judge to find more restrictive functional limitations. The plaintiff has not made this showing.

The plaintiff asserts that the law judge improperly "substitute[ed] his own opinion for that of recognized medical expert[], including Dr. Owi who evaluated Plaintiff at the ALJ's own request" (Doc. 13, p. 11). Specifically, the plaintiff argues that the law judge "disregarded [Dr. Owi's] assessment regarding Plaintiff's ability to sit, stand, and walk in total throughout an eight-hour day" (id., p. 10). However, as asserted by the Commissioner, the law judge did not disregard Dr. Owi's opinion, rather, he essentially accepted it.

13

As noted by the law judge, Dr. Owi, the consultative examiner, assessed that the plaintiff could "sit 1 hour at a time for a total of 7 hours in an 8-hour workday; stand 1 hour at a time for a total of 4 hours; [and] walk 30 minutes at a time for a total of 2 hours" (Tr. 17; Tr. 508–516). Thus, the law judge, found that the plaintiff had the residual functional capacity to perform light work and that "[h]e requires a sit-stand option, ever[y] hour. He can walk 30 minutes at a time" (Tr. 13).

Accordingly, the law judge did not disregard Dr. Owi's opinion at all. The law judge found that the plaintiff was capable of "light work," which, as the Commissioner asserts, is defined as limiting the amount an individual can walk or stand to approximately six hours in an eight-hour work day. See SSR 83–10, 1983 WL 31251 (S.S.A). Thus, the law judge's finding that the plaintiff is capable of performing light work and, additionally, noting that the plaintiff must have "a sit-stand option, ever[y] hour. He can walk 30 minutes at a time," is consistent with Dr. Owi's opinion.

The plaintiff next argues that the law judge erred because he made "internally inconsistent factual findings and fail[ed] to state with clarity the rule being applied" (Doc. 13, p. 11). In essence, the plaintiff asserts that the law judge's finding that the plaintiff could work as a collator

14

operator does not comport with the law judge's other findings as to the plaintiff's limitations. Specifically, he contends that the finding that the plaintiff could work as a collateral operator is inconsistent with the finding that the plaintiff "can have no exposure to hazards . . . including . . . boxes on the floor, doors ajar, or approaching people" and that the plaintiff cannot perform a job that "entail[s] near visual acuity" (id., p. 12) (emphasis omitted). This argument is speculative and unpersuasive.

With respect to work place hazards, the plaintiff argues that "[a]ccording to the testimony of the vocational expert, the [collator operator] job . . . is often done in a warehouse setting" (id., pp. 12–13). Thus, the plaintiff makes the conclusory statement that "[g]iven that the job involves packaging the copied materials, there are likely to be boxes" that would be an unavoidable hazard for the plaintiff (id., p. 13). The plaintiff misrepresents the vocational expert's testimony. At the hearing, the law judge and the vocational expert had the following exchange regarding any hazards and visual limitations as a collator operator (Tr. 60–61):

> Q: And so, what does it say about near vision and those hazards that we mentioned, Ms. Stephens? Is that addressed in the *SOC*, for example?
>
> A: Yes. The near vision is not a factor, and the *Selected Characteristics* indicates that it never impacts the job. The hazards in this work study are not considered hazardous at all. It is usually in a

closed office type setting or oftentimes a secluded
room or a warehouse room. Hazards would not be
a factor at all.

Thus, the plaintiff's argument that the job of a collator operator
would present hazards is pure speculation and was properly rejected. See
Manzo v. Commissioner of Social Security, 408 Fed. Appx. 265, 269 (11th
Cir. 2011) (providing that the plaintiff's argument was "pure speculation,"
and thus was rejected, as the plaintiff "pointed to no evidence in the record"
to support his argument); Klaes v. Commissioner of Social Security, 719
Fed. Appx. 893, 896–97 (11th Cir. 2011) (concluding that evidence
presented by the plaintiff was "mere speculation" as such evidence was not
supported by the record).

Furthermore, the plaintiff's assertion that the job of a collator
operator would present hazards, when the vocational expert testified that it
would not, goes to the credibility of the vocational expert's testimony.
Significantly, at the hearing, plaintiff's counsel did not question the
vocational expert about the plaintiff's now present concern regarding
potential hazards. While counsel questioned the vocational expert about the
ability to sit and stand every hour and the issue of near visual acuity, she did
not challenge the vocational expert's statement that "[h]azards would not be
a factor at all" as a collator operator (Tr. 61). Thus, the plaintiff raising this

new concern in his memorandum after the failure to present it to the law judge at the hearing makes this argument all the more baseless. See Webster v. Commissioner of Social Security, 773 Fed. Appx. 553, 555 (11th Cir. 2019) (providing that plaintiff's counsel "did not question the VE's qualifications and the questions that he posed to the VE did not address his present concerns about the reliability of the VE's testimony").

Likewise, the plaintiff makes a baseless argument that the law judge's "finding that the [plaintiff] cannot do a job that entails near visual acuity is also inconsistent with his finding that the [plaintiff] can perform the job as a collator operator" (Doc. 13, p. 13). Thus, the plaintiff asserts that when the vocational expert was asked if the use of a magnifying glass would impact the ability to work as a collator operator, the vocational expert testified that "it would slow down the production of the job" (id.). The plaintiff, again, misrepresents the vocational expert's testimony.

At the hearing, plaintiff's counsel and the vocational expert had the following exchange (Tr. 61–62):

> Q: If the individual needed a magnifying glass to do that job, would that impact the ability to perform it?
>
> A: Yes.
>
> Q: How would it impact it?

17

A: Well, it would slow down the production with the job. Although I'm not calling it a production job, it would slow down the performance on the job if you have to stop and use a magnifying glass. However, in my opinion, it would be a rare circumstance that the magnifying glass would have to be used. I just can't imagine when a magnifying glass would have to be used for the job.

ATTY: Thank you.

Thus, the plaintiff's assertion that the use of a magnifying glass as a collator operator is speculative at best. The law judge, having considered the expert's testimony, obviously concluded that the job of collator operator does not require the use of a magnifying glass. See Manzo v. Commissioner of Social Security, supra, 408 Fed. Appx. 265 at 269; Klaes v. Commissioner of Social Security, supra, 719 Fed. Appx. 893 at 896–97.

The plaintiff contends that the law judge erred by relying on a response from a vocational expert based on an incomplete hypothetical question. Specifically, the plaintiff asserts that the hypothetical failed to include two points: first, "the total amount of time, [the plaintiff] can walk in an eight-hour day and [that the hypothetical] did not mention [the plaintiff's] capacity for sitting or standing" and second that the question "did not address the length of time involved in each shift change," which is to occur every hour (Doc. 13, pp. 15–16). The plaintiff's contentions are not

18

meritorious.

As to the first point, the plaintiff makes a conclusory argument. Thus, the plaintiff states that "the job as a collator operator is likely to require standing most, if not all, of the eight-hour work day" and "[t]herefore, absent a specific finding in the residual functional capacity assessment regarding the total amount of time Plaintiff can sit, stand and walk, the Court cannot determine whether the residual functional capacity included appropriate limitations" (id., p. 15).

This, however, is a speculative argument that is not supported by the record. The plaintiff on this point does not cite any evidence that the job of collator operator requires standing most of an eight-hour work day. Accordingly, this contention is properly rejected as baseless.

As to the second point, the plaintiff asserts that the law judge "did not address the length of time involved in each shift change" in his hypothetical question to the vocation expert (Doc. 13, p. 16). Thus, the plaintiff argues that "[e]ven being conservative, it is reasonable to conclude that the change from sitting to standing would take at least one minute, which would have a direct impact on time off task" (id.). Accordingly, the plaintiff argues that "[g]iven the importance of time off task to employability . . . the effect of time off task is a critical element that needed to be addressed in the

residual functional capacity" (id., p. 17). This argument is unavailing.

As an initial matter, the law judge included "light work with a sit/stand option every hour" in his hypothetical question to the vocational expert (Tr. 13, 53). Notably, the plaintiff never raised the issue of the amount of time needed to switch from sitting to standing—and how it would cause him to be off task—to the law judge. Thus, there was nothing in the record to support the argument that the plaintiff is now making. Salmeron-Salmeron v. Spivey, 926 F.3d 1283, 1286 (11th Cir. 2019) ("[i]t is a foundational principal of administrative law that a reviewing court must review only the information that was before the agency at the time of its decision in assessing whether the decision was permissible.").

Moreover, the argument that it would take a minute—or even two, as proffered by the plaintiff—is absurd. As stated by the Commissioner, "[a]ny reasonable person would conclude that it takes only a few seconds to move from a sitting to a standing position" (Doc. 20, pp. 11–12). Thus, the plaintiff's contention is baseless.

Finally, the plaintiff contends that the law judge "did not apply proper standards in discounting plaintiff's subjective complaints" (Doc. 13, p. 17). The plaintiff asserts that the law judge discounted his subjective complaints due to his discontinuation of tramadol, non-compliance with

treatment, and his ability to ride a bicycle. Further, the plaintiff notes that the law judge, in essence, unfairly scrutinized the plaintiff for not seeking treatment when, in fact, the plaintiff had limited access to health care. Thus, the plaintiff's argument is that the law judge's credibility determination is flawed. The plaintiff's argument is unavailing.

It is well-established that the responsibility for credibility determinations is reposed in the Commissioner and his determination is entitled to deference. Moore v. Barnhart, supra, 405 F.3d at 1212. Consequently, to overturn the Commissioner's credibility finding, the plaintiff must demonstrate that the evidence compels a contrary finding. Adefemi v. Ashcroft, supra, 386 F.3d at 1027. The plaintiff's criticisms of the credibility finding do not amount to such a showing.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, supra, 395 F.3d at 1210. As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge

determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n. 6 (11th Cir. 1985).

The law judge recognized the need to articulate a credibility determination (Tr. 14). He referred to the pertinent regulations and the Social Security Ruling governing such determinations (id.). This demonstrates that he appropriately applied the Eleventh Circuit pain standard. See Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002).

Furthermore, the law judge discussed, in detail, the plaintiff's subjective complaints (Tr. 15):

> The claimant appeared to allege that his primarily disabling problem is his back condition. The claimant denied surgery for the condition. He stated, "I do not think they would pay for it." The claimant testified that he could not lift his left arm overhead. The claimant testified that he is able to lift 15-20 pounds. However, he alleged needing to lay down during the day. . . . Regarding activities of daily living, the claimant reported that he gets up, takes a hot shower, and he gets flexible. He attempts to perform home physical therapy exercises. He alleged that the exercises do not work, yet he continues to perform them. The claimant testified that he could dress himself, but he does not wear socks because of difficulty with that task. He reported using a long handle shower

22

scrubber, a shower chair, and a grabber device to pick up items off the floor. The claimant testified that he can squat, but he needs to hold onto something to arise. He reported using an electric cart when shopping. Overall, the claimant reported that he spent the day laying down. He testified to cutting the grass, but the chore takes him all day or week because of breaks.

The law judge found that, although the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision" (Tr. 15).

Significantly, the law judge did not reject all of the plaintiff's subjective complaints. To the contrary, the law judge credited some of the plaintiff's testimony, since he found that the plaintiff was limited to performing a reduced range of light work (Tr. 13–14).

Furthermore, the law judge set forth cogent reasons for discounting the credibility of the plaintiff's subjective complaints. In the decision, the law judge includes a detailed review of the plaintiff's medical evidence and his complaints of disabling limitations. The law judge ultimately concluded that the limitations were not consistent with the objective medical findings. For instance, the law judge discussed the

23

plaintiff's continued normal medical examination results, discontinuance of tramadol, and the plaintiff not seeking medical care despite his allegations of pain (Tr. 16):

> In March 2019, Dr. Bitar noted that the claimant reported that medications were helpful. Exam findings remained unchanged with ongoing 5/5 power in all extremities and some limitation due to subjective pain . . . . Dr. Bitar advised the claimant to follow up in 6 months, supportive that the claimant required no more than routine medication management without emergent services or hospitalizations. On March 13, 2019, the claimant reported. . . . that Dr. Bitar declined to refill Tramadol. . . . He denied any emergency room visits or hospitalizations. On March 26, 2016, Stuart Goldsmith, MD, assessed normal 5/5 motor strength . . . [and] normal gait and station. . . . He recommended a home exercise program in addition to formal physical therapy, although the later was apparently not approved by insurance.

The law judge further noted that the plaintiff "attempts to perform physical therapy exercises. He alleged that the exercises do not work, yet he continues to perform them" (Tr. 14). However, the law judge reasonably indicated that, despite on March 25, 2019, the plaintiff noting he was off Tramadol and rating his pain as a 6 of out 10, that he did not seek "out free Health Department clinic services or emergency rooms to alleviate pain" (Tr. 13). Thus, the plaintiff's broad claim that the law judge simply "disregard[ed] the fact that to the extent Plaintiff was not compliant with

24

treatment, the non-compliance was due to a lack of health insurance" is unfounded (Doc. 13, p. 19).

Furthermore, the law judge also considered other circumstances in discounting the plaintiff's credibility, namely his frequent use of a bicycle. Thus, the law judge noted, when discussing the plaintiff's obesity, that "the [plaintiff] testified that he rides his bike [to] all appointments and excursions, suggestive that he was not substantially limited by [his obesity] or other physical conditions. The record reflects that he arrived at the consultative examination on September 16, 2019, via bus and bike" (Tr. 13).

The law judge's explanation is reasonable, supported by substantial evidence, and adequate to discount the plaintiff's subjective complaints. See Heppell–Libsansky v. Commissioner of Social Security, 170 Fed. Appx. 693, 698–99 (11th Cir. 2006). Accordingly, the law judge could reasonably find that the plaintiff's normal examination findings, coupled with his ability to ride his bike, were inconsistent with the plaintiff's subjective complaints of debilitating limitations. See 20 C.F.R. 416.929(c)(2) ("Objective medical evidence … is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms … may have on your ability to work."); Belle v. Barnhart, 129 Fed. Appx. 558, 560 (11th Cir. 2005)

(providing that normal findings on physical examination are relevant to whether the plaintiff's allegations of debilitating diabetes are credible). Accordingly, the plaintiff's argument fails for these reasons.

IV.

For the foregoing reasons, I recommend that the decision be affirmed, and the case closed.

Respectfully submitted,

_Thomas G. Wilson_

THOMAS G. WILSON

UNITED STATES MAGISTRATE JUDGE

DATED: October  5 , 2022.

NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. 636(b)(1)(C). Under 28 U.S.C. 636(b)(1), a party's failure to object to this report's proposed findings and

26

recommendations waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions.